UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – SHASTA, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>SYLVIA MATHEWS BURWELL,<br><br>    Defendant. | No. 2:14-cv-2791-TLN-KJN |
| PRIME HEALTHCARE SERVICES – SHASTA, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>SYLVIA MATHEWS BURWELL,<br><br>    Defendant. | No. 2:15-cv-0154-TLN-KJN |
| PRIME HEALTHCARE SERVICES – SHASTA, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>SYLVIA MATHEWS BURWELL,<br><br>    Defendant. | No. 2:15-cv-0324-TLN-KJN |

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – SHASTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL,<br><br>Defendant. | No. 2:15-cv-0400-TLN-KJN |
| PRIME HEALTHCARE SERVICES – SHASTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL,<br><br>Defendant. | No. 2:15-cv-0450-TLN-KJN |
| PRIME HEALTHCARE SERVICES – SHASTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL,<br><br>Defendant. | No. 2:15-cv-0473-TLN-KJN |
| PRIME HEALTHCARE SERVICES – SHASTA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL,<br><br>Defendant. | No. 2:15-cv-0474-TLN-KJN |

| | |
|---|---|
| PRIME HEALTHCARE SERVICES – SHASTA, LLC, | No. 2:15-cv-0709-TLN-KJN |
| Plaintiff, | |
| v. | |
| SYLVIA MATHEWS BURWELL, | |
| Defendant. | |
| PRIME HEALTHCARE SERVICES – SHASTA, LLC, | No. 2:15-cv-1120-TLN-KJN |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| SYLVIA MATHEWS BURWELL, | |
| Defendant. | |

Plaintiff Prime Healthcare, LLC ("plaintiff") filed these actions against Sylvia Mathew Burwell, in her official capacity as Secretary of the Department of Health and Human Services ("defendant" or "Secretary"). In these actions, plaintiff seeks judicial review of decisions by the Secretary, acting through the Medicare Appeals Council ("MAC"), to dismiss plaintiff's requests for review of unfavorable decisions concerning its claims for reimbursement for emergency medical services it allegedly provided to Medicare beneficiaries prior to the time it had a Medicare provider's agreement in place.

Presently pending before the court is defendant's motion to dismiss plaintiff's first amended complaint filed in each of these actions pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] Plaintiff filed an opposition to the motion filed in each action, and defendant filed a

---

[1] Defendant's motion to dismiss filed in each action is effectively identical to the ones filed in the other actions, and each motion seeks to dismiss the complaint filed in each action on the same jurisdictional basis. Accordingly, the court addresses the motions collectively as if they were a single motion. Defendant's motion is filed at ECF No. 28 in 2:14-cv-2791; ECF No. 21 in 2:15-cv-0154; ECF No. 22 in 2:15-cv-0324; ECF No. 23 in 2:15-cv-0400; ECF No. 19 in 2:15-cv-0450; ECF No. 19 in 2:15-cv-0473; ECF No. 19 in 2:15-cv-0474; ECF No. 19 in 2:15-cv-0709; and ECF No. 15 in 2:15-cv-1120.

3

reply in each action.[2] On the court's own motion, these motions were taken under submission without oral argument. Each motion was subsequently referred to the undersigned for consideration and the issuance of findings and recommendations.[3] The undersigned has fully considered the parties' briefs and appropriate portions of the record. For the reasons that follow, the undersigned recommends that defendant's motion to dismiss filed in each action be granted, and that these actions be dismissed without prejudice for lack of subject matter jurisdiction.

I. <u>Statutory and Regulatory Background</u>

The Medicare Act, established under Title XVIII of the Social Security Act ("the Act"), 42 U.S.C. §§ 1395 *et seq.*, pays for covered medical care provided to individuals over the age of 65 and eligible disabled persons. Under the Act, the Secretary of the U.S. Department of Health and Human Services has broad authority to issue regulations relating to the administration of Medicare. <u>See</u> 42 U.S.C. § 1302(a).

The Medicare program established under the Act reimburses medical providers for services they supply to eligible patients. <u>See generally</u> 42 U.S.C. §§ 1395 *et seq.* The Medicare program consists of four main parts: Part A (Hospital Insurance Benefits), which generally authorizes payment for covered inpatient hospital care and related services, 42 U.S.C. §§ 1395c to 1395i-5, 42 C.F.R. Part 409; Part B (Supplemental Insurance Benefits), which provides supplementary medical insurance for covered medical services, such as doctors' visits, diagnostic testing, or covered medical supplies, such as durable medical equipment, prosthetics and orthotics, 42 U.S.C. §§ 1395j to 1395w-4, 42 C.F.R. Part 410; Part C (Medicare Advantage),

---

[2] Plaintiff's opposition is filed at ECF No. 33 in 2:14-cv-2791; ECF No. 26 in 2:15-cv-0154; ECF No. 27 in 2:15-cv-0324; ECF No. 28 in 2:15-cv-0400; ECF No. 24 in 2:15-cv-0450; ECF No. 24 in 2:15-cv-0473; ECF No. 24 in 2:15-cv-0474; ECF No. 24 in 2:15-cv-0709; and ECF No. 20 in 2:15-cv-1120. Defendant's reply is filed at ECF No. 36 in 2:14-cv-2791; ECF No. 29 in 2:15-cv-0154; ECF No. 30 in 2:15-cv-0324; ECF No. 31 in 2:15-cv-0400; ECF No. 27 in 2:15-cv-0450; ECF No. 27 in 2:15-cv-0473; ECF No. 27 in 2:15-cv-0474; ECF No. 27 in 2:15-cv-0709; and ECF No. 23 in 2:15-cv-1120.

[3] The referral order is filed at ECF No. 50 in 2:14-cv-2791; ECF No. 41 in 2:15-cv-0154; ECF No. 43 in 2:15-cv-0324; ECF No. 43 in 2:15-cv-0400; ECF No. 39 in 2:15-cv-0450; ECF No. 39 in 2:15-cv-0473; ECF No. 39 in 2:15-cv-0474; ECF No. 41 in 2:15-cv-0709; and ECF No. 35 in 2:15-cv-1120.

which authorizes beneficiaries to obtain services through HMOs and other "managed care" arrangements, 42 U.S.C. §§ 1395w-21 to 1395w-28, 42 C.F.R. Part 422; and Part D (Prescription Drugs), which provides prescription drug benefits to beneficiaries, 42 U.S.C. §§ 1395w-101, *et seq.* Medicare Part A is at issue in the actions currently before the court because plaintiff's requests for review by the MAC involved claims for reimbursement of Hospital Insurance Benefits for the care it allegedly provided to Medicare beneficiaries.

The Secretary makes reimbursement payments under Part A for services furnished to Medicare beneficiaries directly to "providers of services." See 42 U.S.C. §§ 1395f(a)-(b), 1395x(u). Under Title XVIII, a "provider of services" is "a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or, . . . fund." 42 U.S.C. § 1395x(u). Generally, in order to obtain reimbursement for services furnished, a provider of services must first enroll in the Medicare program and obtain a provider agreement. 42 U.S.C. §§ 1395f(a) ("[P]ayment for services furnished an individual may be made only to providers of services which are eligible therefor under section 1395cc of this title."); 1395cc(a) ("Any provider of services . . . shall be qualified to participate under this subchapter and shall be eligible for payments under this subchapter if it files with the Secretary an agreement . . ."). The Secretary's implementing regulations interpret the applicable statutory provisions, defining a "provider" as "a hospital, a CAH, a skilled nursing facility, a comprehensive outpatient rehabilitation facility, a home health agency, or a hospice that has in effect an agreement to participate in Medicare . . . ." 42 C.F.R. § 400.202.

A reimbursement payment under the Medicare program may be made to a hospital that does not have a participation agreement for inpatient hospital services that are emergency services when Medicare would be required to pay for the services "if the hospital had such [a participation] agreement in effect and otherwise met the conditions of payment," and the non-participating hospital has "elected to claim payments" for all inpatient and outpatient emergency services furnished during the calendar year. 42 U.S.C. § 1395f(d)(1); see also 42 C.F.R. § 424.108.

In order to obtain payment under the Medicare program, the claimant must first submit a claim to the appropriate Medicare contractor. 42 U.S.C. § 1395ff(a)(1); 42 C.F.R. § 405.920. Upon receipt of a claim for payment, the Medicare contractor issues an "initial determination" addressing whether the item or service is covered and meets all other payment requirements, and, if so, the amount deemed owing. Id. If the claimant is dissatisfied with the initial determination, a "redetermination" may be requested by the same Medicare contractor. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940. Next, if the claimant is not satisfied with the contractor's redetermination, "reconsideration" may be requested by a "qualified independent contractor" ("QIC"). 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960. A still dissatisfied claimant may then request a hearing, "as provided in [42 U.S.C. §] 405(b)," before an administrative law judge ("ALJ"). 42 U.S.C. § 1395ff(d)(1); 42 C.F.R. § 405.1002. The ALJ's decision may then be reviewed by the MAC. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100. Any party to the ALJ's decision may request the MAC to review that decision *de novo*. Id.

Generally, once the administrative process discussed above is exhausted, judicial review of the Secretary's "final decision" is available as provided in 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)(1)(A)). See Heckler v. Ringer, 466 U.S. 602, 605 (1984) ("Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act."). "Pursuant to her rulemaking authority, . . . the Secretary has provided that a 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." Id. at 606 (citations omitted).

III. Relevant Allegations of Plaintiff's First Amended Complaints

Plaintiff alleges in its operative amended complaint in each action that on October 23, 2008, it purchased a hospital located in Redding, California as part of a limited asset sale. Due to the nature of the sale, plaintiff had to apply for a new Medicare National Provider Identifier ("NPI") in order to obtain a Medicare provider agreement and receive reimbursement from that program for the care it provided to Medicare beneficiaries. Plaintiff applied for an NPI through

Palmetto, a Medicare contractor, on November 10, 2008, but Palmetto delayed its approval of that application for several months, resulting in plaintiff's Medicare provider agreement becoming effective on February 18, 2009.

Plaintiff alleges that between November 1, 2008, and February 18, 2009, a period during which its application for a provider agreement was still pending before Palmetto, it had provided medically necessary emergency services to 1,967 Medicare beneficiaries at the hospital it had purchased. Plaintiff had provided such services based on its belief that a grant of its application to become a Medicare provider would be retroactive, which would have allowed it seek reimbursement for the care it provided to those beneficiaries. However, plaintiff was told that its approved provider status would not take retroactive effect prior to February 18, 2009. Accordingly, plaintiff submitted Medicare reimbursement claims to Palmetto as a non-participating provider for the emergency services it had provided to each of the 1,967 Medicare beneficiaries to whom it had provided such care between November 1, 2008, and February 18, 2009. Plaintiff alleges that, after some delay, Palmetto ultimately denied 1,094 of the 1,967 claims it submitted on the basis that that the documentation plaintiff submitted did not support a finding that the claims were for emergency services and that plaintiff could have diverted the patients to another nearby hospital for care. Plaintiff alleges that it requested reconsideration for each of its denied claims, but that Palmetto upheld its denial in each instance.

Plaintiff alleges that it then appealed each of Palmetto's denials to the QIC, which upheld Palmetto's denial in each instance and determined that the services plaintiff rendered to the Medicare beneficiaries could not be reimbursed. After these denials, plaintiff submitted a request for hearing before an ALJ to review each of the QIC's adverse determinations. With regard to each request for hearing, the ALJ held that plaintiff's claims were meritorious and plaintiff was entitled to reimbursement for each of its claims because the services it had rendered to the Medicare beneficiaries were emergency medical services and the nearby hospital was not a viable option for the transfer of those beneficiaries.

Defendant, acting through the Centers for Medicare and Medicaid Services, then referred the ALJ's decision to the MAC for review. After deciding on its own motion to review each of

the ALJ's decisions finding plaintiff's claims meritorious, the MAC dismissed plaintiff's request for hearing for each claim at issue in these actions based on a finding that plaintiff lacked standing to assert its claims under the applicable statutory and regulatory framework. In support of that finding in each decision, the MAC determined that plaintiff did not have a participation agreement in effect during the dates on which it provided its services to the Medicare beneficiaries underlying its claims, therefore meaning it did not meet the definition of a "provider" under the applicable regulations. The MAC determined further that plaintiff's lack of status as a "provider" meant that the applicable regulations precluded it from appealing the Medicare contractor's initial determination. The MAC also found that plaintiff did not obtain an assignment of beneficiary appeal rights and was not seeking to appeal an initial determination because a beneficiary is deceased with regard to any of its reimbursement claims. Accordingly, the MAC concluded in each appeal that plaintiff had no right to request a hearing under the applicable regulations.

IV. <u>Legal Standards for Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1)</u>

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994) (citations omitted). Indeed, a federal court also has an independent duty to assess whether subject matter jurisdiction exists, whether or not the parties raise the issue. <u>See United Investors Life Ins. Co. v. Waddell & Reed Inc.</u>, 360 F.3d 960, 967 (9th Cir. 2004) (stating that "the district court had a duty to establish subject matter jurisdiction over the removed action *sua sponte*, whether the parties raised the issue or not").

A federal district court generally has original jurisdiction over a civil action when: (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of citizenship and the amount in controversy exceeds $75,000. <u>See</u> 28 U.S.C. §§ 1331, 1332(a). However, in these actions, plaintiff alleges the existence of subject matter jurisdiction pursuant to 42 U.S.C. § 405(g), which grants judicial

8

review of a final administrative decision on a claim for Medicare reimbursement made by the Secretary. See 42 U.S.C. § 1395ff(b)(1)(A) (applying 42 U.S.C. § 405(g) to Medicare claims). 42 U.S.C. § 405(g) provides the exclusive jurisdictional avenue for obtaining judicial review of such administrative decisions arising under the Medicare Act. See 42 U.S.C. § 405(h) ("No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."); Ringer, 466 U.S. at 614-15 (1984) ("The third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act.").

"Federal Rule of Civil Procedure 12(b)(1) allows a defendant, by motion, to raise the defense that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action." McMillan v. Lowe's Home Centers, LLC, 2016 WL 4899164, at *2 (E.D. Cal. Sept. 14, 2016) (citing Peralta v. Hispanic Bus., Inc., 419 F.3d 1068 (9th Cir. 2005)). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 383 F.3d 1035, 1039 (9th Cir. 2004) (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 797 F.3d 1117, 1121 (9th Cir. 2014). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In the present actions, defendant makes a facial attack on jurisdiction, because she relies on the allegations of the first amended complaint filed in each action and the MAC decisions attached to those pleadings to assert that the court lacks subject matter jurisdiction over each matter.

9

V.     Discussion

Defendant argues that each action should be dismissed for lack of subject matter jurisdiction because the MAC decisions plaintiff challenges are not final decisions, and therefore are unsuitable for judicial review pursuant to 42 U.S.C. § 405(g). In particular, defendant contends that the applicable regulations the Secretary has promulgated pursuant to her authority under the Act expressly provide that the MAC's decision to dismiss plaintiff's request for hearing at issue in each action is a decision that is not subject to judicial review. The court agrees.

"The Medicare statute limits judicial review of the Secretary's decisions to 'final decision[s] . . . made after a hearing.'" Palomar Med. Ctr. v. Sebelius, 693 F.3d 1151, 1165 (9th Cir. 2012) (quoting 42 U.S.C. §§ 405(g)-(h), 1395ff(b)(1)(A)). "The statute 'does not define final decision and its meaning is left to the Secretary to flesh out by regulation.'" Id. (quoting Matlock v. Sullivan, 908 F.2d 492, 493 (9th Cir. 1990); see also Weinberger v. Salfi, 422 U.S. 749, 766 (1975). Here, the MAC decision for which plaintiff seeks judicial review in each action is an order by the MAC dismissing plaintiff's request for hearing. The Secretary's regulations expressly provide that "[t]he [MAC's] dismissal of a request for hearing is . . . binding and not subject to judicial review." 42 C.F.R. § 405.1116. In each decision at issue in these actions, the MAC specifically acknowledged the fact that its determination denying plaintiff's request for hearing fell under 42 C.F.R. § 405.1116 and was a binding, non-appealable decision. Accordingly, the court does not have jurisdiction to consider the merits of plaintiff's challenge to the MAC's decision to dismiss plaintiff's requests for hearing at issue in these actions because such decisions are not appealable under the plain language of the applicable regulations promulgated by the Secretary pursuant to her authority under the Act. See Palomar Med. Ctr. v. Sebelius, 2010 WL 2985837, at *3 (S.D. Cal. July 28, 2010), aff'd, 693 F.3d 1151 (9th Cir. 2012) ("This Court does not have jurisdiction to consider an issue the MAC correctly found it lacked jurisdiction to consider under the regulations.").

////
////
////

Furthermore, as defendant correctly asserts, the fact that the Secretary's regulations define the MAC's decisions at issue to be "binding and not subject to judicial review" means that those decisions are, by the Secretary's own definition, not "final decisions" for purposes of judicial review pursuant to 42 U.S.C. §§ 405(g). Accordingly, because there was no "final decision" on the merits of plaintiff's claims at issue, plaintiff failed to satisfy the administrative exhaustion requirement that is a prerequisite to judicial review under 42 U.S.C. § 405(g).[4]

Plaintiff argues that the MAC *de facto* reached a final decision in each action because each decision was based on a factual determination that plaintiff failed to obtain an assignment of benefits from Medicare beneficiaries, and a legal determination that such an assignment would have provided plaintiff the ability to engage in the administrative appeals process regarding its claims after their initial denial. This assertion is not well taken. In each action, the MAC exercised its discretionary authority to review the ALJ's decision, vacated that decision, and dismissed plaintiff's request for hearing on the ground that plaintiff, as a non-participating hospital, had no standing to appeal the initial claim denials under the relevant statutory and regulatory framework. Such a determination was procedural in nature. The mere fact that the MAC made factual determinations to conclude that plaintiff lacked standing to administratively appeal the denials of its reimbursement claims does not change the procedural nature of the MAC's rulings. Moreover, the fact that the MAC made factual determinations does not make its decision at issue in each case subject to judicial review under the applicable regulatory and statutory framework. Indeed, as discussed above, the MAC's decisions at issue in these actions are orders dismissing plaintiff's requests for hearing, orders the Secretary has made expressly unreviewable by promulgating 42 C.F.R. § 405.1116. In defining those decisions in such a manner, it is clear that the Secretary deems such decisions to not be "final decisions" subject to judicial review under 42 U.S.C. § 405(g).[5] See Palomar Med. Ctr., 693 F.3d at 1165.

---

[4] While plaintiff's only asserted jurisdictional basis for review in each action is 42 U.S.C. § 405(g), any other jurisdictional basis that plaintiff might assert would not confer jurisdiction because § 405(g) is the exclusive jurisdictional avenue for judicial review of any claims that arise under the Medicare Act. See 42 U.S.C. § 405(h); Ringer, 466 U.S. at 614-15.

[5] Plaintiff similarly asserts that the MAC's decisions are "final decisions" because they are based

11

Plaintiff also argues that the MAC made erroneous factual determinations in each of its decisions that plaintiff did not receive an assignment of benefits from the Medicare beneficiaries to whom plaintiff had provided emergency medical services, and in some cases that plaintiff did not file an election to participate in the Medicare program for some of its claims. Plaintiff asserts that, contrary to the MAC's factual finding, it received an assignment from all of the Medicare beneficiaries that received the emergency care underlying each of plaintiff's reimbursement claims, a fact that it claims it can prove in discovery. Plaintiff also contends that the documentary evidence provided to the MAC demonstrates that it filed an election for reimbursement with regard to every claim at issue. Plaintiff claims that these erroneous factual and regulatory findings by the MAC constitute final findings of fact and law that the court may review. However, plaintiff cites to no support for its assertion that suggests that the MAC's decisions at issue were rendered "final decisions" within the meaning of 42 U.S.C. § 405(g) merely because plaintiff claims that those determination were based on erroneous factual determinations.[6]

////

---

on the MAC's final interpretation of Medicare regulations, and plaintiff challenges them based on a contention that such an interpretation is contrary to the statutory law governing Medicare. However, regardless of whether the MAC interpreted Medicare statutes or regulations in rendering the decisions at issue in these cases, those decisions were decisions on a request for hearing, which the applicable regulations expressly deem as not being subject to judicial review, 42 C.F.R. § 405.1116, therefore making them not "final decisions" for purposes of 42 U.S.C. § 405(g).

[6] Moreover, with regard to plaintiff's assertion that the MAC made an erroneous factual determination concerning whether plaintiff obtained an assignment of benefits from each beneficiary to whom it allegedly provided emergency services, the allegations in plaintiff's complaint in each case fail to demonstrate that such an assignment was ever made. Plaintiff also has not attached any extrinsic evidence to its opposition in support of this assertion in any of the actions presently before the court. Perhaps in recognition of this fact, plaintiff contends in its opposition to defendant's motion in each action that it is planning to produce evidence of such assignments during discovery. However, to the extent that plaintiff makes such a factual assertion at this juncture in its oppositions to defendant's motions to dismiss, it is wholly unsupported by the allegations of the relevant complaints, or any extrinsic evidence. Plaintiff also argues in its opposition that, contrary to the MAC's determination, it had standing to request a hearing before an ALJ because it obtained an assignment of appeals rights from each Medicare beneficiary to whom it alleges it provided emergency services. This argument is also without merit because plaintiff fails to substantiate its assertion, through its allegations or otherwise, that it obtained such assignments.

Plaintiff argues further that, unlike the case law defendant cites to in support of its assertion that the MAC's decisions at issue here are not subject to judicial review, the present actions all challenge an MAC decision concluding that it could not review a timely request for hearing, instead of a request to reopen an untimely request for reimbursement. However, while the courts in the cases defendant cites to in support of its assertion addressed MAC decisions on requests different from the requests at issue here, the reason for those courts' denial of judicial review of the MAC's decisions in those cases is equally applicable to the decisions at issue here. Indeed, like the MAC's decision denying a request to reopen an untimely request for reimbursement at issue in Palomar Medical Center v. Sebelius, the MAC's decision to deny plaintiff's request in each action here is subject to a regulation promulgated by the Secretary that expressly precludes judicial review. 693 F.3d at 1166 (holding that the court lacked jurisdiction to review the MAC's denial of the plaintiff's request to reopen a claim determination because the Secretary had promulgated a regulation expressly precluding further review of such a decision); see also Califano v. Sanders, 430 U.S. 99, 108 (1977) (holding that denial of a petition to reopen a prior hearing was not a "final judgment" subject to judicial review because "the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the Secretary's regulations and not by the Social Security Act"). Accordingly, plaintiff's argument that the MAC decisions at issue in the present cases are materially distinguishable from the case law defendant cites to in support of its motion is not well taken.

Finally, plaintiff argues that even if it is barred from administratively appealing the MAC's denial in each action under the Secretary's applicable regulations because the MAC's decisions are not "final decisions," the court should still find that it is entitled to judicial review of the MAC's decision in each case based on a waiver of the administrative exhaustion requirement. More particularly, plaintiff asserts that the court should waive the administrative exhaustion requirement required to obtain a "final judgment" for purposes of 42 U.S.C. § 405(g) based on the MAC's finding that, as a non-participating hospital, plaintiff lacked the right to appeal the initial denial of its application for Medicare reimbursement.

////

"A final judgment [for purposes of 42 U.S.C. § 405(g)] consists of two elements: the presentment of a claim to the Secretary and the exhaustion of administrative remedies." Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir. 1993). "The presentment requirement is jurisdictional, and therefore cannot be waived by the Secretary or the courts. The exhaustion requirement . . . is not jurisdictional, and thus, is waivable by either the Secretary or the courts." Id. (citing Matthews v. Eldridge, 424 U.S. 319, 330 (1975)).

The presentment requirement should be construed liberally, although it requires more than reliance on an initial application for benefits. Situ v. Leavitt, 240 F.R.D. 551, 555, 557 (N.D. Cal. 2007) (permitting satisfaction of presentment requirement by making a complaint through phone call or contact with agency). Here, plaintiff alleges in each action that it not only made an initial application for reimbursement for each claim at issue, but also appealed denial of those applications, and filed a request for hearing before an ALJ for each application. Therefore, the court finds that plaintiff has satisfied the jurisdictional presentment requirement in each action.

In determining whether a particular case merits judicial waiver of the exhaustion requirement, the Ninth Circuit Court of Appeals has employed the following three-part test: "[t]he claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." Johnson, 2 F.3d at 921 (citing Briggs v. Sullivan, 886 F.2d 1132, 1139 (9th Cir. 1989)); see also Bowen v. City of New York, 476 U.S. 467, 483 (1986). All three factors must be shown. See Kaiser v. Blue Cross of California, 347 F.3d 1107, 1115 (9th Cir. 2003); Kildare v. Saenz, 325 F.3d 1078, 1082 (9th Cir. 2003).

Generally, with regard to the collaterality prong, "[a] plaintiff's claim is collateral if it is not essentially a claim for benefits." Johnson, 2 F.3d at 921 (citing City of New York, 476 U.S. at 483). In order to satisfy the irreparability requirement, a plaintiff must provide "'at least a colorable claim' that exhaustion will cause them irreparable injury." Johnson, 2 F.3d at 921 (quoting Eldridge, 424 U.S. at 331). The final factor, futility, is based on the United States Supreme Court's finding in Bowen v. City of New York that "[t]he ultimate decision of whether

14

to waive exhaustion should not be made solely by mechanical application of the [collaterality and irreparability] factors, but should also be guided by the policies underlying the exhaustion requirement." 476 U.S. at 484. "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." Weinberger v. Salfi, 422 U.S. 749, 765 (1975).

Plaintiff argues that the claims at issue in the present actions are collateral to its underlying claims for benefits because they hinge on an assertion that the MAC's interpretation of the administrative appeals framework to deny plaintiff further review of its claims creates an impermissible conflict between California state law, which requires all hospitals, including those that do not have a Medicare provider agreement in place, to provide emergency medical services to all persons who enter their emergency departments, and Medicare's appeals framework, which, based on the MAC's interpretation, does not allow a non-participating hospital to fully appeal a wrongful denial of a request for reimbursement for providing emergency services to Medicare beneficiaries. However, a review of plaintiff's operative pleading in each action demonstrates that plaintiff's claims are not collateral to its substantive claims of entitlement.

In particular, the relief plaintiff requests in each action clearly demonstrates that the claims at issue are not collateral to the claims for reimbursement plaintiff had presented administratively. Indeed, plaintiff's first amended complaint in each action seeks an order declaring that the associated MAC decision be reversed, that plaintiff has standing and appeal rights to request full administrative review of the initial denial of its claims, and that plaintiff is entitled to reimbursement for the emergency services it rendered to Medicare beneficiaries between November 1, 2008, and February 18, 2009. In essence, in each action, plaintiff seeks to have the court conduct a judicial review of the associated MAC decision on the merits, reverse that decision, and then determine that plaintiff is entitled to reimbursement for the emergency services it alleges it rendered to Medicare beneficiaries. At bottom, plaintiff requests that the court grant its administrative claims for the payment of Medicare benefits in each case. Such a

request demonstrates that plaintiff's claims at issue in these actions do not meet the collaterality requirement necessary to waive administrative exhaustion. See City of New York, 476 U.S. 467, 483 (1986) (concluding the plaintiffs' claims were collateral to their substantive claim of entitlement because they "neither sought nor were awarded benefits in the District Court"); Ringer, 466 U.S. at 614 (holding that the respondents' supposed "procedural" objections asserted in the action were "inextricably intertwined" with their substantive administrative claims because they sought "the invalidation of the Secretary's current policy and a 'substantive' declaration from her that the expenses [for which they sought reimbursement were] reimbursable under the Medicare Act"); Kaiser, 347 F.3d at 1112 (noting that "cases that do not, on their face, appear to claim specific Medicare benefits or reimbursements . . . have been found to arise under Medicare" when they amount to " '[c]leverly concealed claims for benefits' "); Johnson, 2 F.3d at 921 (citing City of New York, 476 U.S. at 483) (noting that "[a] plaintiff's claim is collateral if it is not essentially a claim for benefits").

While plaintiff asserts its claims in each action under the Administrative Procedures Act, those claims specifically attack the substance of the corresponding MAC decision and the MAC's application of Secretary's regulations to plaintiff's claims, rather than the Secretary's underlying regulations that resulted in the MAC's decisions. In Johnson, the Ninth Circuit Court of Appeals found collaterality present specifically because

> [t]he plaintiffs' attack is essentially to the [system-wide policy promulgated by the Secretary] itself, not to its application to them, nor to the ultimate substantive determination of their benefits. Their challenge to the policy rises and falls on its own, separate from the merits of their claim for benefits.

2 F.3d at 921-22. Here, plaintiff does not seek to invalidate the policies or regulations underlying the MAC's decision in each case, but rather asserts that each decision itself is erroneous and that plaintiff is entitled to a reversal of each decision and an award of the benefits it sought through each of its administrative claims. Therefore, the claims plaintiff asserts and the relief plaintiff seeks in its pleading in each case are so bound up with the merits of its underlying administrative claims that they cannot be fairly characterized as collateral to the administrative proceedings at

issue.

Even assuming, without deciding, that plaintiff can meet the irreparability and futility prongs of the waiver test,[7] the court finds plaintiff cannot succeed in obtaining a judicial waiver of the administrative exhaustion requirement over its claims asserted in these actions because it fails to demonstrate collaterality. See Kildare, 325 F.3d at 1082 (denying judicial waiver of exhaustion where the plaintiffs failed to demonstrate that their claims were collateral to their claims for benefits); Cares, Inc. v. Leavitt, 2007 WL 2023543, at *2 (E.D. Cal. July 11, 2007) (citing Kaiser, 347 F.3d at 1115) (noting that "[a]ll three factors must be shown" in order to obtain a judicial waiver of the exhaustion requirement).

VI.     Conclusion

In sum, the allegations of plaintiff's first amended complaint and the attached MAC decision filed in each action fail to show that the MAC decision challenged in each action was a "final decision" subject to judicial review pursuant to 42 U.S.C. § 405(g). Accordingly, the court lacks subject matter jurisdiction over plaintiff's claims asserted in these actions.

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1.      Defendant's motion to dismiss filed in each of these actions be GRANTED.

2.      These actions be dismissed without prejudice for lack of subject matter jurisdiction.

3.      The Clerk of Court be directed to vacate all dates and close these cases.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written

---

[7] As the MAC identified in its decisions at issue and as defendant argues in its briefing, it appears that plaintiff could have sought reimbursement for the emergency services it rendered to the Medicare beneficiaries by bringing its administrative claims as a non-participating *supplier*, instead of as a non-participating provider, which would have provided it the administrative appeal rights under the Secretary's regulatory framework that the MAC found it did not have as a non-participating provider. Accordingly, while the court does not address whether plaintiff can demonstrate futility, it does note that it appears that the Secretary's regulatory framework does provide at least an alternative administrative avenue for review that would result in a "final decision" on the merits of plaintiff's claims.

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated:  May 9, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE